

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| SYLVIA R. BUSH, ROBERT HAILEY, BARRY LEE HAILEY, QUAIL PASTURE LP, DAVID JESS ST. CLAIR, JUSTIN DALLAS ST. CLAIR, JON CHRISTOPHER ST. CLAIR, JULIE A. CANON, LYNN D. HUGHES, DONNA PEPPER, ARMADURA FAMILY HOLDINGS, LP, MELANIE S. LEE, JOHN F. GRIFFIN, GOAT HILL PROPERTIES, LLC., ROSETTA RESOURCES OPERATING LP, ROSETTA RESOURCES OPERATING GP, LLC, and NOBLE ENERGY, INC., | § § § § § § § § § | No. 08-23-00261-CV<br><br>Appeal from the<br><br>143rd District Court<br><br>of Reeves County, Texas<br><br>Cause No. 17-06-21987 |
| Appellants, | § | |
| | § | |
| v. | § | |
| | § | |
| YARBOROUGH OIL & GAS, LP, CARROLLTON MINERAL PARTNERS, CARROLLTON MINERAL PARTNERS FUND 11, LP, STERLING MI-RO PARTNERS, LP, EAGLE OIL & GAS PARTNERS, LLC, EAGLE OIL & GAS CO., SANTA ELENA MINERALS, LP, DEXTER CAPITAL COMPANY LLC, ESTATE OF ROBERT MITCHELL SAYRE, LAMBERT LAND COMPANY, LLC, RALPH AND MARTHA BROWN AS TRUSTEES OF THE RALPH A. BROWN AND MARTHA BROWN REVOCABLE TRUST DATED 4-15-2015, J.B. CHAMPION, JR., JORDEX | § § § § § § § § | |
| | § | |

INVESTMENTS COMPANY, DESERT
PARTNERS IV, L.P., OKLAHOMA STATE §
UNIVERSITY FOUNDATION, ANGLE
OIL COMPANY, CHARLOTTE §
HENDERSON AS TRUSTEE OF THE
CHARLOTTE HENDERSON REVOCABLE §
TRUST, RALPH T. AND GLENDA L.
CHURCHILL, and C.A. & C.H. §
LUNDBERG,
                                      §
                    Appellees.
                                      §

## OPINION

This case involves the interpretation of a decades-old tax foreclosure judgment. Specifically, the parties dispute whether that judgment not only foreclosed on the property owned by an adjudicated delinquent taxpayer, but also on a 1/2 mineral interest, which was severed from the land years earlier, and was undisputedly owned by a party *not* named in the judgment. Successors of the tax sale purchaser and of the owner of the mineral interest filed cross motions for summary judgment in this trespass-to-try-title and breach of contract suit. The trial court ruled in favor of the mineral interest successors, and the tax purchaser successors appealed. Because the mineral interest was not included in the scope of the foreclosure judgment, and the suit is not otherwise barred by legal and equitable defenses, we hold the successors of the fractional mineral interest proved their title as a matter of law. We affirm.

## I. BACKGROUND

### A. Factual Background

This suit arose from competing chains of title to property in Reeves County. The undisputed common source, M.A. Piercy, owned the entirety of a 560-acre tract (the Property) from which she conveyed, in March 1937, an undivided 1/2 mineral interest to Thomas C. Vaughn.

2

The mineral deed from Piercy to Vaughn was recorded in the Reeves County Real Property Records as of July 20, 1937.[1] Vaughn later conveyed his interest to Roy M. Johnson, who in turn conveyed away fractional mineral interests to multiple parties, which eventually passed to Appellees (the Vaughn Successors).[2]

The source of the parties' disagreement is a tax foreclosure suit filed against Piercy. Many years of past-due taxes had accrued against Piercy and tax liens had attached to her property. Some liens arose from tax years earlier than 1937. Between 1937 and 1948, no property taxes were assessed against any owner connected to the 560-acre tract other than Piercy. Neither Johnson nor any of his grantees were served with notice of the foreclosure proceeding. Based on the suit, a default tax judgment was rendered in July 1948 in favor of the taxing authorities, and an order of sale followed months later. The county sheriff executed a tax deed conveying the tract to the taxing entities, subject to the former owner's right of redemption. In 1951, the taxing entities quitclaimed their interest to John Bush. Bush's interest eventually passed down to some of the appellants here (the Bush Successors).[3] Other appellants are oil companies holding mineral leases from the Bush

---

[1] The mineral deed from Piercy to Vaughn specifically conveyed "an undivided one-half interest in and to all of the oil, gas and other minerals in and under, that I may own and that may be produced from the following described land situated in Reeves County, Texas, to-wit: The South one-half (S½) and the Southwest One-quarter (SW¼) of the Northwest One-quarter (NW¼) of Section Seventeen (17), in Block C-7, Public School Land, and containing 360 acres, more or less, also All of Section Number Ten (10), Block C-7, except the East one-half (E½) of the west one-quarter (NW¼) of [] said section, and containing 560 acres, more or less."

[2] The Vaughn Successors include Yarborough Oil & Gas, LP, Carrollton Mineral Partners, Carrollton Mineral Partners Fund 11, LP, Sterling MI-RO Partners, LP, Eagle Oil & Gas Partners, LLC, Eagle Oil & Gas Co., Dexter Capital Company LLC, Estate of Robert Mitchell Sayre, Lambert Land Company, LLC, Ralph and Martha Brown as Trustees of the Ralph A. Brown and Martha Brown Revocable Trust dated 04-15-2015, J.B. Champion, Jr., Jordex Investments Company, Desert Partners IV, L.P., Oklahoma State University Foundation, Angle Oil Company, Charlotte Henderson as Trustee of the Charlotte Henderson Revocable Trust, Ralph T. and Glenda L. Churchill, Santa Elena Minerals LP, and C.A. & C.H. Lundberg.

[3] The Bush successors include Sylvia R. Bush, Robert Hailey, Barry Lee Hailey, Quail Pasture LP, David Jess St. Clair, Justin Dallas St. Clair, Jon Christopher St. Clair, Julie A. Canon, Lynn D. Hughes, Donna Pepper, Armadura Family Holdings, LP, Melanie S. Lee, John F. Griffin, and Goat Hill Properties, LLC.

Successors (collectively, Rosetta/Noble).[4] Rosetta/Noble began drilling in 2014, and after crediting the Bush Successors with a share of the mineral interest, it paid them proportional royalties from its production.

## B. Procedural background

In 2017, Yarborough Oil & Gas, L.P., a Vaughn Successor, sued Rosetta/Noble for trespass-to-try-title, breach of contract, and money had and received, alleging it owned a fractional share of a participating mineral interest and it had not been paid royalties from production obtained on the tract.[5] Rosetta/Noble answered, and through a plea in abatement, it also claimed that Yarborough needed to add necessary parties to the suit, including the Bush Successors, and other successors as well to the 1937 mineral deed from Piercy to Vaughn. The trial court abated the proceeding, and Yarborough soon filed an amended petition naming additional parties. The trial court thereafter aligned the Bush Successors with Rosetta/Noble as defendants, and Vaughn Successors as plaintiffs. The trial court appointed an attorney ad litem to represent those parties who were served but had defaulted in filing an answer.

Yarborough filed a traditional motion for summary judgment, urging that the foreclosure judgment resulting from the 1948 tax suit did not affect its fractional mineral interest in the tract as a Vaughn Successor. Certain Vaughn Successors, who had answered the suit, joined in Yarborough's motion, while other parties represented by an ad litem did not.[6] Soon thereafter, the Bush Successors filed a competing, traditional and no-evidence motion for summary judgment,

---

[4] Rosetta Resources Operating LP, Rosetta Resources Operating GP, LLC, and Noble Energy, Inc.

[5] Yarborough sought a declaratory judgment acknowledging it owned "a 115/2240 participating mineral interest in the south half (S/2), the northeast quarter (NE/4) and the west half of the northwest quarter (W/2 NW/4) of Section 10, Block C7, PSL Survey, Reeves County, Texas."

[6] Santa Elena Minerals, LP, also a Vaughn Successor, joined Yarborough's motion and filed its own traditional and no-evidence motion for summary judgment. Because Santa Elena requested essentially the same relief as did the rest of the Vaughn Successors, we see no need to separately address these motions, and instead we consider them collectively.

claiming the 1948 tax foreclosure judgment in fact foreclosed on all interests in the Property, including the 1/2 mineral interest that Piercy had conveyed to Vaughn, years earlier, in 1937. The Bush Successors' no-evidence motion asserted that the Vaughn Successors could not overcome the foreclosure of their interests because (1) their challenge was barred by limitations, and (2) they lacked standing to assert any due process claims. Rosetta/Noble joined in the Bush Successors' motions and it added, as well, a motion seeking to defeat the breach of contract claim.

The trial court granted the Yarborough's motion joined by the Vaughn Successors and denied the Bush Successors' motions, which were joined by Rosetta/Noble, noting that the 1948 tax foreclosure "impacted" only Piercy's interest and not the 1/2 mineral interest sold to Vaughn. Rosetta/Noble and the Bush Successors (collectively, Appellants) each filed notices of appeal.

## II. STANDARD OF REVIEW

"We review a trial court's grant of summary judgment de novo." *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). A traditional summary judgment is proper when a movant establishes that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). A no-evidence motion for summary judgment pursuant to Tex. R. Civ. P. 166a(i) is essentially a motion for a pretrial directed verdict. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex. 2006). We review such motion under the same legal sufficiency standard used to review a directed verdict. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). When parties file competing motions for summary judgment, and the trial court grants one motion and denies the other, we consider the evidence presented by both sides and render the judgment the trial court should have rendered. *Trial v. Dragon*, 593 S.W.3d 313, 316–17 (Tex. 2019).

## III. ISSUE ON APPEAL

In one issue, Appellants urge the trial court erred in concluding that the 1/2 mineral interest conveyed to the Vaughn Successors' predecessors in 1937—and subject to statutory tax liens at the time of the conveyance—was "not impacted by the 1948 tax foreclosure judgment." They contend the tax judgment foreclosed on the liens on the Property in its entirety including all of the mineral estate. Conversely, the Vaughn Successors maintain the trial court correctly granted their motions for summary judgment, contending the 1948 tax foreclosure suit only divested Piercy of her interest. Specifically, they argue the tax entities were on notice of the 1937 conveyance and could have assessed Vaughn and his successors with a portion of the Property's prior taxes, or with those accruing after 1937, but they chose not to do so, and instead looked solely to Piercy for the prior and subsequently assessed taxes. In short, they argue the 1948 judgment only adjudicated Piercy's interest, and the sheriff's deed only sold the foreclosed interest.

Based on the parties' arguments, and our review of the trial court's summary judgment, we construe the issue on appeal to include two subsidiary questions: (1) Were the Vaughn minerals expressly or implicitly included in the scope of the 1948 foreclosure judgment? (2) Is the underlying suit time-barred, either by a statute of limitations or other equitable considerations?

We address the subsidiary questions in turn.

## IV. SCOPE OF THE FORECLOSURE JUDGMENT

Appellants argue the 1948 tax foreclosure judgment foreclosed on the entire Property including all mineral interests. In opposition, the Vaughn Successors argue the judgment and its resulting sheriff's deed were limited to Piercy's interest only, not their predecessors' interest.

6

### A. Applicable law

In recent opinions, the Texas Supreme Court has reiterated a legal framework for analyzing various written instruments, including those involving mineral interests. *See Van Dyke v. Navigator Group*, 668 S.W.3d 353, 365 (Tex. 2023) (interpreting a 1924 deed reserving a fractional mineral interest); *Endeavor Energy Res., L.P. v. Energen Res. Corp.*, 615 S.W.3d 144, 148 (Tex. 2020) (construing an oil-and-gas lease); *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 767–69 (Tex. 2018) (analyzing a settlement agreement). These same rules of interpretation apply in construing the meaning of a court order or judgment. *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex. 1971).

First, we begin with the "literal" text within the four corners of the judgment. *Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011). If the language is "clear and unambiguous," the court looks no further. *In Matter of Estate of Downing*, 461 S.W.3d 231, 238 (Tex. App.—El Paso 2015, no pet.). We apply the "plain, ordinary, and generally accepted meaning" of words and rules of grammar, unless terms are defined or used in a "technical or specialized way." *Finley Res., Inc. v. Headington Royalty, Inc.*, 672 S.W.3d 332, 339 (Tex. 2023). We do not read provisions of the judgment in insolation; "even a 'literal' interpretation of an unambiguous order requires us to look at the order as a whole." *Kourosh Hemyari*, 355 at 626. If portions "appear contradictory or inconsistent," we "strive to harmonize all of the parts, construing the instrument to give effect to all of its provisions." *Luckel v. White*, 819 S.W.2d 459, 462 (Tex. 1991). "Conclusive effect is not to be given the use or not at a particular point in the judgment of the commonly employed decretal words, and what the court had adjudicated is to be determined from a fair reading of all the provisions of the judgment." *Constance v. Constance*, 544 S.W.2d 659, 660 (Tex. 1976). Our goal is to "determine not what the trial court should have done but, if

possible, what the court actually did." *Shanks v. Treadway*, 110 S.W.3d 444, 446 (Tex. 2003). Though older cases have occasionally applied canons of construction, the Texas Supreme Court has increasingly discounted these approaches, "particularly in our decisions addressing mineral-interest conveyances." *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 744, 746 (Tex. 2020). Courts are encouraged instead to "resolve any conflicts by harmonizing the agreement's provisions, rather than by applying arbitrary or mechanical default rules." *Id.* at 744.

Second, when the text of the judgment is "inconclusive," we consider surrounding facts and circumstances to "shed light on the objective meaning conveyed by the text." *Endeavor*, 615 S.W.3d at 152–53. To determine historical meaning, we generally begin with "contemporary legal and lay dictionaries." *Van Dyke*, 668 S.W.3d at 360. Then we consider historical cases and statutes. *Id.* When interpreting older instruments, we must "determine what a text could reasonably have meant to an informed but disinterested speaker at the time the text was written." *Id.* at 362. The "text does not evolve with the broader language." *Id.* at 360. We also "avoid strictly construing an instrument's language if it would lead to absurd results." *Kourosh Hemyari*, 355 S.W.3d at 626. Although oil and gas experts "have a proper (if confined) role," *Dynegy Midstream Services, Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 170 (Tex. 2009), expert opinions as to the meaning of common oil and gas terms is not necessary. *Nettye Engler Energy, LP v. BlueStone Nat. Res. II, LLC*, 639 S.W.3d 682, 691 (Tex. 2022); *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 486 (Tex. 2019).

Third, in the event of "inescapable ambiguity," courts consider extrinsic evidence of subjective intent. *Van Dyke*, 668 S.W.3d at 361, 365. In the case of judgments, this generally means determining the legally correct meaning. *Reiss v. Reiss*, 118 S.W.3d 439, 442 (Tex. 2003) ("Only when a judgment is subject to more than one reasonable interpretation do we adopt the construction

8

that correctly applies the law."). In such case, we consider the law in force at the time of the judgment. *Cedillo v. Gaitan*, 981 S.W.2d 388, 390 (Tex. App.—San Antonio 1998, no pet.). In addition, we would consider the entire record. *State Mortg. Corp. v. Traylor*, 36 S.W.2d 440, 441 (Tex. 1931).

Notwithstanding these principles, the Supreme Court further noted that "other legal principles," such as "the presumed-grant doctrine," or statutes, "may require courts to fix present-day ownership *regardless* of what the original text provided." *Van Dyke*, 668 S.W.3d at 365 n.4. That is, when historical records are clear and a recognized doctrine is implicated, the "original instrument would at most provide an alternative holding such that a court could exercise its discretion not to reach that question at all," and may "dispense with the deed-construction analysis." *Id.* at 365 n.4, 368 n.11.

## B. Analysis

### (1) Express language of the 1948 tax judgment

The closing paragraphs of the 1948 tax foreclosure judgment state in pertinent part:

> After hearing the evidence submitted, the court finds that this is an action for delinquent ad valorem taxes, penalties, interest and costs allowed by law, and for foreclosure of the constitutional and statutory lien for said taxes against the property described in Plaintiff's petition.

> The court further finds from the evidence and decrees, that the plaintiff and following taxing units which are parties to this suit, have valid claims for taxes, penalties, interest and costs . . . against the property hereinafter described, and valid tax liens in said amounts as follows, to-wit:

> One (1), acre out of Section 25, Block C-7, P.S.L., Abst. #3040 and, S½ and NE¾ and W½ of NW¼, Section 10, Block C-7, Public School Land, Abst. #4363, containing 560 acres; and, SW¼ and SE¼ and SW¼ of NW¼, Section 17, Block C-7, Public School Land, Abst. #4830, containing 360 acres, all lying and being situated in Reeves County, Texas.

That language is followed by the following decree:

> It is therefore considered, ordered and adjudged by the Court that the plaintiffs . . . recover of and from *defendant(s) herein above named* the total sum of money due for taxes . . . on each separately described tract . . . .

> It is further Ordered and Decreed by the Court that the tax lien securing the payment of the same be, and the same is *hereby foreclosed on each tract of said land against the rights, titles, liens and claims of each and all of the said defendants herein* . . . and that the Clerk of this Court do issue an Order of Sale, directed to the Sheriff or any Constable of REEVES County, Texas, commanding him to seize, levy upon and advertise for sale, as under execution, each of the said above described tracts of land . . . and to sell the same . . . . [Emphasis added.]

Relatedly, the sheriff's deed more specifically provides in part that the Sheriff:

> Bargained, Sold, and Conveyed . . . *all the right, title and interest of the said Mrs. M.A. Piercy, Defendant*, in and to the following described land that said Defendant had in and to the said land . . . . [Emphasis added.]

Based on this pertinent language, Appellants urge the 1948 tax judgment "unmistakenly awards foreclosure on the liens on the [Property] in its entirety." To this extent, they argue the 1/2 mineral interest falls within the scope of the judgment based on its decretal language, notwithstanding that Piercy had conveyed those interests to Vaughn years earlier. They rely on language providing, "the tax lien . . . is hereby foreclosed on each *tract of said land*." Appellants reason that because "tract of said land" or "said property" is therein described as an area of 560 acres, it necessarily encompasses the entire mineral estate of the Property.

The Vaughn Successors respond that the cited language includes additional words that specifically limit the scope of the foreclosure to the interest of Piercy: "the tax lien . . . is hereby foreclosed on each tract of said land against the rights, titles, liens and claims *of each and all of the said defendants herein*." (Emphasis added.) More specifically, they contend the sheriff's deed provided that the Property conveyed to the tax sale purchasers was limited to the "right, title and interest *of the said Mrs. M.A. Piercy, Defendant*." (Emphasis added.)

10

In their reply, Appellants characterize the reference to Piercy and "said defendants" as isolated instances that should not determine the meaning of the judgment. Appellants emphasize that multiple parts of the judgment refer to the "above described tract." Regarding the explicit reference to the "interest of the said Mrs. M.A. Piercy" in the sheriff's deed, Appellants suggest this language must be disregarded in favor of the language of the judgment. Appellants quote *Ball v. Carroll* for the proposition that the scope of a foreclosure is "not affected by the fact that the deed from the sheriff only purports to convey the interest" of certain defendants. 92 S.W. 1023, 1026 (Tex. Civ. App.—Galveston 1906, writ ref'd). That is, they cite *Ball* for the proposition that a foreclosure judgment controls over a sheriff's deed that only purports to convey interests of certain parties. But as the Vaughn Successors noted in their response brief, *Ball* is factually distinguishable. Unlike here, the parties omitted in the sheriff's deed in *Ball* were categorically named in the suit as "all persons owning or having or claiming any interest in the land," and they were cited and noticed by publication. *See id*. at 1024. The court held the foreclosure was not limited to heirs as named in the deed: "[W]e think this judgment foreclosed the tax lien against *all of the parties to the suit*, and the defendants who claim under said judgment are claiming under the unknown owners, as well as under the unknown heirs of the Zacharies." *Id*. at 1026 (emphasis added).

We are also not persuaded by Appellants' reliance on the reference to "liens of defendants" in the decretal language of the judgment, which they suggest negates the specific reference to "said defendants." The decree provides that "lien . . . is hereby foreclosed . . . against the . . . rights, titles, *liens* and claims of the said defendants." It is not immediately apparent why a judgment would declare plaintiffs' liens foreclosed against defendants' liens. "A lien is not title to real property" but merely a "right of recourse to sell specific property." *Migura v. Dukes*, 770 S.W.2d

568, 569 (Tex. 1989). Thus, liens are not taxable property and tax liens only attach to property of defendants that can be recovered in foreclosure proceedings. Tex. Tax Code Ann. § 32.01. The Tax Code and many foreclosure judgments do provide that the tax lien is prior and superior to any liens of the defendant. *See* Tex. Tax Code Ann. § 32.05(b)(1) (providing that "a tax lien . . . takes priority over . . . the claim of any holder of a lien on property encumbered by the lien"). In this instance, the decretal language does not refer to "priority" or "superiority" of liens. The preceding sentence awards judgment to "defendant(s) herein above named." The caption and the first paragraph identify the "defendant" as Piercy. Construing the judgment as a whole, Thus, the "liens of defendants" should be construed as an isolated phrase that does not negate the clear intent of the judgment as a whole to limit the scope of foreclosure to the interests of Piercy.

The reference to Piercy in the sheriff's deed is even more difficult to reconcile with Appellants' interpretation of the judgment. Although a sheriff's deed cannot exceed the scope of the judgment authorizing the sale, the express limitation of the scope of the deed to interests of Piercy is consistent and, if anything, narrower than the limitation in the judgment to "said defendants." Appellants' claim to title is based in part on the language of this deed. It is too late for Appellants to challenge the sheriff's deed or to request a correction. Appellants have offered no authority for otherwise disregarding such an explicit restriction on interests conveyed in a sheriff's deed that is consistent with the judgment. We therefore conclude this restriction is not inconsistent; it is not an isolated instance; and we may not "harmonize" it by effectively ignoring this language.

### (2) Objective facts and circumstances

#### (a) Contemporaneous statutes

Supplementing their textual arguments, Appellants urge that contemporary statutes create a presumption that the judgment and resulting tax deed conveyed the Vaughn Successors' interest,

12

notwithstanding the plain text of those instruments. To begin, the Delinquent Tax Act of 1895 provided that a tax deed "shall be held in any court of in this State to vest good and perfect law or equity title in the purchaser thereof, subject to be impeached only for actual fraud." Act of April 13, 1895, 24th Leg., R.S., ch. 42, 1895 Tex. Gen. Laws 50, 52. Currently the statute provides: "The purchaser may conclusively presume that the tax sale was valid and shall have full title to the property free and clear of the right, title, and interest of any person that arose before the tax sale . . . ." Tex. Tax. Code Ann. § 33.08(b).

Contrary to Appellants' argument, other provisions of the Tax Code impose limits on the scope of the foreclosed property when liens are omitted or waived. The relevant provision provides that a taxing authority could fail to appear and omit taxes and thereby release its tax lien on the Property as to that amount. *See* Tex. Tax Code Ann. §§ 33.42(c), 33.44; *see also Pram Int'l, Inc. v. Houston Indep. Sch. Dist.*, No. 01-98-00838-CV, 1999 WL 740688, at *2 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (tax authority's omission of certain tax years in foreclosure pleading waived recovery under § 33.42). To this extent, § 33.42 limits, rather than maximizes, the scope of foreclosure to the delinquent taxes (as of the date of the judgment) that were pleaded by all taxing authorities in a suit filed by any one of them. *See City of El Paso v. Forti*, 181 S.W.2d 579, 580 (Tex. 1944) (stating "chief purpose" of predecessor statute was "prevention of a multiplicity of suits by providing for the inclusion of all taxing units in one action and adjudicating the claims of all units").

Appellants also fail to explain how the Tax Code provision for "good and perfect title" otherwise alters the property interest that is expressly decreed in the judgment.[7] We have previously considered how the text of a foreclosure judgment may limit the foreclosed property

---

[7] The Tax Code was later amended to specify that a tax deed vests "good and perfect title . . . to the interest owned by the defendant in the property subject to the foreclosure." Tex. Tax Code Ann. § 34.01(n).

interests. *See Ridgefield Permian, LLC v. Diamondback E & P LLC*, 626 S.W.3d 357, 368 (Tex. App.—El Paso 2021, pet. denied) (holding foreclosure limited to royalty interests where the "plain language of the Tax Judgment only specifically described the two royalty interests under the Meriwether Lease"); *see also Pounds v. Jurgens*, 296 S.W.3d 100, 106 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (holding a "judgment of foreclosure and sale did not extend to the royalty interest").

Addressing the nature of interests foreclosed, Appellants emphasize that the taxing authorities had a statutory right to foreclose against both Piercy and the mineral interest owners for a portion of delinquent taxes that accrued before she conveyed, subject to any liens, a fractional mineral interest to Vaughn. Appellants point out that tax liens "automatically" attach and accumulate year over year without expiration. Our sister court addressed a similar argument, noting that taxing authorities "undoubtedly had a lien on the land for the taxes, but it was not automatic, but had to be foreclosed, and, in order to foreclose it legally, the state was compelled to have the necessary parties before the court." *State Mortg. Corp. v. Magee*, 27 S.W.2d 864, 865–66 (Tex. App.—San Antonio 1930, no writ). Though liens do attach automatically, the purpose of the Delinquent Tax Act is to ensure that foreclosure does not automatically occur upon nonpayment of taxes, but rather, it remains subject to judicial process. *Brown v. Bonougli*, 232 S.W. 490, 492 (Tex. 1921).

Appellants focus their argument on a now-repealed provision added in 1897 stating that delinquent taxes "shall remain a lien upon the said land . . . though it be listed in the name of a person not the actual owner; and *though the ownership be changed*, the land may be sold under the judgment of the court for all taxes, interest, penalty and costs shown to be due by such assessment for any preceding year." Act of April 14, 1897, 25th Leg., R.S., ch. 103, 1897 Tex. Gen.

14

Laws 132. In contrast, the current statute provides: "At any time after its tax on property becomes delinquent, a taxing unit may file suit to foreclose the lien securing payment of the tax, to enforce personal liability for the tax, or both." Tex. Tax Code Ann. § 33.41(a). Appellants argue the 1897 statute renders the 1948 judgment solely against Piercy, and the resulting sheriff's deed as well, nonetheless conclusive against the claims of owners without notice. Appellants do not cite any case supporting this interpretation.

The only case we have found citing this provision, however, rejected Appellants' interpretation. *See Patton v. Minor*, 117 S.W. 920, 922 (Tex. App. 1909), *rev'd on other grounds*, 125 S.W. 6 (Tex. 1910). There, the case involved a claim by an adverse possessor challenging a foreclosure judgment against unknown owners based on lack of notice. *Id.* The court opined: "Although taxes, as provided in this article, do form a lien upon the land, no matter in whom the ownership may lie, and though the ownership be changed, the occupant, however, or person whose rights are maturing by limitation, who is in possession claiming adversely to the owner, cannot have his right, or, inchoate right, cut off by a suit against unknown owners, when he has no legal notice of the pendency of such suit." *Id.* We agree the statute merely provided that the state could obtain a lien upon the "listing" of the prior owner by the tax collector prior to suit; but, unlike Appellants' claim, we do not agree it relieved the taxing entities from joining a current interest owner in the foreclosure suit and in accord with judicial process.

Appellants' suggestion that the statute authorized open-ended foreclosure on the interests of oblivious parties, including predecessor owners as applicable here, would conflict with other provisions of the Delinquent Tax Act. The Texas Supreme Court previously examined the purpose of the Delinquent Tax Act, explaining that it was passed in 1895 to "remedy the evils" of the former method of summary tax sales, e.g. "disregard of the owner's property rights in dispensing with

notice and an opportunity to be heard." *Brown*, 232 S.W. at 492. The Court emphasized the centrality of the notice provisions: "Prior to the enactment of the law . . . a defendant in execution who owned land subject to sale was under the necessity of watching the court-house door for advertisements of sales of real estate[.]" *Bean v. City of Brownwood*, 45 S.W. 897, 898 (Tex. 1898). The Legislature was "careful to secure the property rights of the owner from invasion" by mandating that owners "shall be made parties" and "shall be served with process." *Brown,* 232 S.W. at 492*.* "The owner is here afforded full opportunity to defend an unfounded or unjust claim for taxes." *Id.*; *see also Duncan v. Gabler*, 215 S.W.2d 155, 161 (1948) (reiterating analysis in *Brown*). The Delinquent Tax Act therefore protects the right to bring challenges to the scope or validity of foreclosure judgments, while encouraging finality regarding other challenges to tax deeds.

At the time of the 1948 judgment, the Delinquent Tax Act of 1895 as amended specifically provided: "The proper persons shall be made parties defendant in such suit and shall be served with process and other proceedings had therein as provided by law for suits of like character in the direct courts of this State." Act of April 13, 1895, 24th Leg., R.S., ch. 42, 1895 Tex. Gen. Laws 52, *amended by* Act of April 14, 1897, 25th Leg., R.S., ch. 103, 1897 Tex. Gen. Laws 132. The substance of this statute was incorporated in 1947 into Rule 117a, which remains largely unchanged. Tex. R. Civ. P. 117a. In key part, Rule 117a provides that "known" owners must be personally served; "unknown" owners may be served by publication; "record owners of such property or of any apparent interest therein, including, without limitation, record lien holders, shall not be included in the designation of 'unknown owners[.]'" *Id.* The Tax Code retains duplicative requirements that taxing authorities plead "each person named if known who owned the property" and plead that "the person sued owns the property when the suit is filed. . . ." Tex. Tax Code Ann.

16

§ 33.43(a)(1), (8). The 1948 tax statutes also included a requirement that petitions specify that "defendants are ____, ____ and ____, who . . . own or claim some interest in the hereinafter described real property." Act of April 6, 1939, 46th Leg., R.S., ch. 18, 1939 Tex. Gen. Laws 664.

In sum, we are not persuaded by Appellants' claim that contemporary statutes support a presumption that the 1948 judgment and its resulting sheriff's deed foreclosed on the Vaughn Successors' mineral interest.

### (b) Contemporaneous case law

Courts may also construe the foreclosure judgment in light of contemporaneous case law interpreting the Delinquent Tax Act. In a series of cases following the Delinquent Tax Act, the Texas Supreme Court held that a title-based judgment "does not conclude" the interests of property owners who are not joined pursuant to the statute. *Scales v. Wren*, 127 S.W. 164, 164 (Tex. 1910); *see also Horst v. Lightfoot*, 132 S.W. 761, 762 (Tex. 1910) (same); *State Mortg. Corp. v. Traylor*, 36 S.W.2d 440, 443–44 (Tex. 1931) (same); *Kirby Lumber Corp. v. S. Lumber Co.*, 196 S.W.2d 387, 389 (Tex. 1946) (same); *Tabasco Consol. Indep. Sch. Dist. v. Reyna's Estate*, 93 S.W.2d 796, 798 (Tex. App.—San Antonio 1936, no writ) (same). In a case with similar facts, *Ditmore Land & Cattle Co. v. Hicks*, the Texas Supreme Court applied the rule to a 1/2 mineral interest sold to a predecessor in title. 290 S.W.2d 499, 500 (Tex. 1956).[8] In the same year as the foreclosure at issue, the Texas Supreme Court recognized that the last vestige of summary tax sales had been repealed in 1929:

> It may be added that the present Attorney General of Texas and his two immediate predecessors, in carefully considered opinions, have advised county attorneys and school district officials that the Act of 1929 is constitutional and that neither the tax collector nor anyone else has authority to sell real estate for delinquent taxes except after foreclosure of the tax lien in a court.

---

[8] The Vaughn Successors provide several additional intermediate court opinions affirming this long-established rule. *E.g.*, *Norris v. Harry Hott Assocs., Inc.*, 612 S.W.2d 630, 631 (Tex. App.—Dallas 1981, no writ) (holding "judgment of foreclosure did not bind Hott who was not a party").

*Duncan v. Gabler*, 215 S.W.2d 155, 162–63 (Tex. 1948). As a consequence, contemporary case law supports an interpretation that only Piercy's interest was foreclosed or conveyed by the instruments. Thus, in this instance, we need not be concerned whether long-established case law requires the court to "to fix present-day ownership *regardless* of what the original text provided." *Van Dyke*, 668 S.W.3d at 365 n.4.

### (c) Corroborating evidence

Even if the foreclosure judgment did not unambiguously and conclusively omit the Vaughn Successors' interest, we find that extrinsic evidence submitted by the Vaughn Successors corroborates that fact. Recorded property records from the foreclosure suit establish that no mineral owners or other defendants were named, cited, or served in the delinquency suit. Tellingly, Appellants' predecessor Bush in fact purchased a 130/1120 interest of the minerals in dispute two months after purchasing Piercy's interest in the tax sale through a quitclaim deed from the taxing authorities. Referencing the sheriff's deed, Bush's quitclaim deed conveying property expressly limited the scope to Piercy's interest only:

> THAT WHEREAS, by virtue of an Order of Sale issued out of the District Court of Reeves County, Texas, for the 109th Judicial District in Cause No. 344-E, in favor of the State of Texas and Reeves County as Plaintiff . . . *against MRS. M.A. PIERCY as Defendant*, on a certain judgment granted on the 20th day of September, 1948 . . . the deed evidencing said sale being dated the 27th day of December, 1948, and recorded in Volume 122, at pages 332-333, in Deed Records of Reeves County, Texas, reference being hereby made to said judgment, order of sale, and sheriff's deed and their record for all purposes . . .
>
> NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS, THAT Reeves County, Texas, and the State of Texas . . .do hereby bargain, sell, release and forever quit-claim unto the said John J. Bush, his heirs and assigns all of the right, title and interest in the hereinafter described property as was acquired and is now held by said taxing units under and by virtue of said tax judgment and said tax foreclosure sale to said taxing units. . . .

18

Appellants argue that Bush's purchase of the minerals two months after the tax sale is no evidence of the scope of the foreclosure judgment. We disagree and find the quitclaim deed corroborates our interpretation of the limited scope of the foreclosure as reflected by the plain language of the judgment.

Having considered the plain text of the judgment and sheriff's deed in light of contemporary statutes, case law, and other objective facts and circumstances, we conclude the Vaughn Successors mineral interests were not foreclosed on by these instruments. But our analysis is not yet complete as Appellants raise additional issues by their appeal.

Appellants advance alternative grounds for this Court to nonetheless reverse and render judgment in their favor. They urge that the Vaughn Successors' claims are barred—to the extent they improperly attempt to challenge the validity and force of the 1948 tax judgment—due to: (1) the Tax Code's one-year limitations period and its precondition to filing suit, (2) other policy and equitable reasons, and (3) lack of standing to bring their claims. We turn next to address each of these alternative grounds for reversing the trial court's summary judgment.

### C. Limitations, policy considerations, and standing

#### (1) Limitations and preconditions

Appellants argue the Vaughn Successors' title claims expired long ago under the statute of limitations. Tex. Tax Code Ann. § 33.54(a). Relatedly, they also contend that the Vaughn Successors failed to satisfy the statutory precondition of paying any taxes "before and after foreclosure." *Id.* § 33.54(b).

As for limitations, § 33.54 of the Tax Code provides a one-year statute of limitations for "an action relating to the title to property . . . against the purchaser of the property at a tax sale." Tex. Tax Code Ann. § 33.54(a). The statute includes a tolling provision, providing that a plaintiff who "pays taxes on the property during the applicable limitations period and until the

19

commencement of an action" may avoid the limitations period. *Id.* § 33.54(b). "When actions are barred by this section, the purchaser at the tax sale or the purchaser's successor in interest has full title to the property, precluding all other claims." *Id.* § 33.54(c).

In support of limitations, Appellants cite this Court's decision in *W.L. Pickens Grandchildren's Joint Venture v. DOH Oil Co.*, a title suit in which the plaintiffs claimed that a foreclosure judgment "did not have any effect on its title to the property because the suit was flawed without the entity named as a party." 281 S.W.3d 116, 122 (Tex. App.—El Paso 2008, pet. denied). There, this Court held that "regardless of the potential merit . . . that argument must be exercised within the statute of limitations." *Id.* Distinguishing from *Pickens*, our sister court of appeals held a quiet title suit to clear a tax foreclosure judgment, alleging failure to join a record lienholder, was not time-barred under § 33.54. *See Sec. State Bank & Tr. v. Bexar Cnty.*, 397 S.W.3d 715, 723 (Tex. App.—San Antonio 2012, pet. denied), *abrogated on other grounds by Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180 (Tex. 2022). And, while the Texas Supreme Court abrogated *Sec. State Bank & Tr.* on other grounds, it followed our sister court of appeals' reasoning on limitations, while declining to follow *Pickens*, and based its decision instead on *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012). *See Mitchell*, 649 S.W.3d at 194. And relatedly, a federal district court has also concluded that *Pickens* was abrogated by *PNS Stores*. *See Ocwen Loan Servicing, LLC v. Gonzalez Fin. Holdings, Inc.*, 77 F.Supp.3d 584, 594 (S.D. Tex. 2015) ("[F]ollowing the defendants' intermediate appellate authority would contravene Texas Supreme Court precedent that '[a] State law time limit is unenforceable when it violates due process.'"), *aff'd sub nom. Ocwen Loan Servicing, L.L.C. v. Moss,* 628 F.App'x 327 (5th Cir. 2016). Summarizing, then, the Texas Supreme Court rejected the limitations bar in *Mitchell v. MAP Res.,*

20

*Inc.*, citing *Ocwen* and *Sec. State Bank* approvingly, and disapproving of cases following *Pickens*. *Mitchell*, 649 S.W.3d at 194.

The Vaughn Successors contend in their response that § 33.54 is not applicable because it does not apply to a title suit seeking a determination of the scope of a tax foreclosure judgment. They rely on our decision in *Diamondback*, in which we held § 33.54 did not apply to suits to determine the scope of a foreclosure judgment. *Diamondback*, 626 S.W.3d at 357. For sure, *Diamondback* is a closer fit given the Vaughn Successors are requesting essentially the same relief. That is, they seek a judgment declaring their mineral interest was not foreclosed on by the 1948 judgment.

In an effort to avoid *Diamondback*¸ Appellants suggest the Vaughn Successors' claim as to the scope of the foreclosure judgment may be viewed as an impermissible collateral attack on the validity of the judgment; or alternatively, they argue the Vaughn Successors' disclaimer of a collateral attack may be a judicial admission of Appellants' title. Both parties construe *Diamondback* as requiring plaintiffs to make an *election* between "scope" claims and those asserting a collateral attack on a judgment. But modern rules of procedure were adopted to avoid this type of circuitous argument.[9] By asserting alternative claims, an election becomes unnecessary. *See* Tex. R. Civ. P. 48.

Appellants also point to *Haynes v. DOH Oil Co.*, an opinion from our sister court of appeals in direct contradiction with *Diamondback*, which held that a similar "scope" suit was barred by the statute of limitations. 647 S.W.3d 793, 798 (Tex. App.—Eastland 2022, no pet.) (dismissing

---

[9] *See* Tex. R. Civ. P. 48 ("A party may also state as many separate claims or defenses as he has regardless of consistency. . . ."); *Petit v. Klinke*, 254 S.W.2d 769, 772 (Tex. 1953) (inconsistent pleading is "a practice long permitted in this state"); *Lyons v. Lindsey Morden Claims Mgmt., Inc.*, 985 S.W.2d 86, 92 (Tex. App.—El Paso 1998, no pet.) ("[P]leading in conflict with other allegations in the same pleading does not constitute a judicial admission[.]").

title suit seeking a determination that sheriff's deeds "only conveyed royalty interests and not her entire mineral estate"). Because we do not believe § 33.54 was intended to limit "scope" suits, we disagree with *Haynes* to this extent. Prior to *Mitchell v. Map*, we construed the statute only to bar suits "challenging the validity of a tax sale," as opposed to suits merely requesting a declaration of the scope of a deed. *Pickens*, 281 S.W.3d at 121.

As for the Tax Code's precondition to filing suit, Appellants assert the Vaughn Successors failed to comply with the statutory precondition to pay taxes before filing suit. *See* Tex. Tax Code Ann. § 33.54(b). Appellants insist only in their reply brief that taxes were assessed against Piercy prior to the severance of the minerals in 1937. They do not point to evidence of taxes assessed specifically on the mineral interest owners "before foreclosure" in 1948. Nor is there evidence that taxes were assessed on any party "after foreclosure," presumably because oil and gas production did not occur until shortly before suit was filed in 2017.[10]

Although Appellants broadly argue the Vaughn Successors should be paying the taxes in the amount of the notice, they do not include the amount provided by § 33.54(b). To this extent, there has been no notice, or opportunity for the Vaughn Successors to pay a proportional amount due, if any. Again, based on our record, the minerals were completely undeveloped and unexplored when the taxing entities had assessed taxes on Piercy in 1948 and foreclosed on their liens.

We conclude that no Tax Code limitation or precondition to filing suit barred the Vaughn Successors from pursuing their claims.

---

[10] Mineral interests are generally taxed only after production occurs based on the average price of production in the preceding year; in addition, mineral interest owners are subject to larger state-level "severance" taxes based on production, separate from ad valorem taxes. Tex. Tax Code Ann. §§ 23.175, 201.001, 202.001

**(2) Standing as a bar to the suit**

Appellants rely on *Am. Homeowner Pres. Fund, LP v. Pirkle*, 475 S.W.3d 507 (Tex. App.—Fort Worth 2015, pet. denied) for the proposition that successors-in-interest like the Vaughn Successors lack standing "to the extent that the challenge the Vaughn Successors make to the scope of the judgment is an attempt to collaterally challenge it" for lack of notice to their predecessors. In opposition, the Vaughn Successors urge they intend no such collateral attack. Instead, they assert the language of the 1948 judgment shows it only concluded the interests of Piercy, not that of their predecessors-in-interest.

As discussed earlier, we disagree with the standing argument to the extent it suggests it matters whether the Vaughn Successors have brought a collateral attack in addition to a trespass-to-try-title claim seeking a determination of the scope of the judgment. We decline to apply *Pirkle* to such a "scope" claim.[11]

**(3) Policy reasons and equitable considerations**

Based on policy reasons and equitable considerations, Appellants further argue there could be endless claims if the Vaughn Successors are permitted to pursue their trespass-to-try-title claims. We note here that Appellants have not briefed the issue of laches as was pleaded and argued in *MAP Res., Inc. v. Mitchell*, No. 08-24-00088-CV, 2024 WL ____, (Tex. App.—El Paso Dec. 30, 2024, no pet. h.) (addressing a laches defense raised in a collateral attack on a foreclosure judgment). Instead, Appellants argue it "would be inequitable to allow a 'subsequent purchaser to ignore the deed records.'" They suggest the Vaughn Successors' have had "constructive notice"

---

[11] *See Kidwell v. Black*, 104 S.W.3d 686, 690 (Tex. App.—Fort Worth 2003, pet. denied) (owners had standing to bring trespass-to-try-title claim); *Cameron Cty. v. Tompkins*, 422 S.W.3d 789, 801 (Tex. App.—Corpus Christi 2013, pet. denied) (same); *Horst*, 132 S.W. at 762; *Traylor*, 36 S.W.2d at 445; *Kirby Lumber*, 196 S.W.2d at 389; *Ditmore*, 290 S.W.2d at 500; *Davis v. Mueller*, 528 S.W.3d 97, 103 (Tex. 2017) (standing to bring quiet title suit but not fraud claim).

of the foreclosure for more than 70 years. We conclude this argument construes the title system backwards.

The Legislature has enacted a recording statute ensuring that title records are maintained in perpetuity, and a trespass-to-try-title claim enables record title owners to prove ownership back to the sovereign. *See* Tex. Prop. Code Ann. §§ 13.002, 22.001; *see also Van Dyke*, 668 S.W.3d at 361 ("So important is it that these records are public and permanent that we recently overturned a decades-old default judgment foreclosing a tax lien largely because of the failure 'to consult public deed and tax records[.]'"). The recording statute provides that property owners are on notice of prior claims reflected in their chain of title pursuant to the recording statute. Tex. Prop. Code Ann. § 13.002. But they are not put on notice of a deed recorded *after* a conveyance to a predecessor, which would be "out of the chain of title" of the property owner. *Fitzgerald v. Le Grande*, 187 S.W.2d 155, 159 (Tex. App.—El Paso 1945, no writ); *Atl. Ref. Co. v. Noel*, 443 S.W.2d 35, 39–40 (Tex. 1969) (citing cases). In tandem with the recording statute, the Legislature established limitations periods based on adverse possession. Tex. Civ. Prac. & Rem. Code Ann. §§ 16.021–.038 (providing for periods ranging from 3 to 25 years for the purpose of settling title with or without recorded deeds, notwithstanding prior deeds in chains of title).[12] These statutes are supplemented by two limitations periods specifically for suits regarding problematic deeds. Tex. Civ. Prac. & Rem. Code Ann. §§ 16.033, 16.051. These statutes constitute the Legislature's

---

[12] The Texas Supreme Court has provided as follows:

> A mineral estate, even when severed from the surface estate, may be adversely possessed under the various statutes of limitations. Once severance occurs, possession of the surface alone will not constitute adverse possession of minerals. Generally, courts across the country including Texas courts have said that in order to mature title by limitations to a mineral estate, actual possession of the minerals must occur. In the case of oil and gas, that means drilling and production of oil or gas.

*Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 192–93 (Tex. 2003) (citation omitted).

24

response to Appellants' concerns about endless claims, as they ensure that land development is not stifled by the dead hand of the past while they also protect the rights of property owners.

Accordingly, for all these reasons, the Vaughn Successors' claims are not barred by the Tax Code's limitations or its precondition to filing suit, nor by policy reasons or equitable considerations, nor for lack of standing to bring their claims.

## V. CONCLUSION

Having resolved each subsidiary issue in favor of the Vaughn Successors, we overrule Appellants' sole issue and affirm the trial court's judgment.

GINA M. PALAFOX, Justice

December 30, 2024

Before Alley, C.J., Palafox, and Soto, JJ.

25